NATHAN D. APPLETON, *Ex'or versus* RUFUS HORTON, JR.

In proceedings in equity, the answer of the defendant, negativing every material allegation made against him in the bill, ordinarily, is equivalent to the testimony of one credible witness that the facts stated in the bill are not true; and the plaintiff, in such case, must adduce proof sufficient to overcome such denial and fully establish his allegations.

The defendant in a bill in equity, in good faith and without design to defraud any one, contracted to convey a tract of wild land, situated at a great distance from him, and which he had never seen, to a third person, or his assigns, upon the payment of a certain sum in money and giving security for the payment of an additional sum at a future day, within a stipulated time; and such third person, by means of fraudulent representations and contrivances, made a contract of sale thereof to the plaintiff in equity at a greatly enhanced price; and at the request of such third person the defendant in equity made a conveyance of the land to him, and he to the plaintiff in equity; and the defendant, being wholly ignorant that any fraud had been practised, received out of the money and security given by the plaintiff sufficient to pay the consideration of his conveyance thereof. *It was held,* that the bill, under such circumstances, could not be sustained.

THIS was a bill in equity originally drawn against Rufus Horton, jr. Jabez Churchill, Randall Fish, and Charles Dolbier,

but it was served on Horton alone. It was heard upon bill, answer and proof.

The bill was in favor of the late Hon. John Holmes alone, was commenced by him, and prosecuted also by him until after the proof had been taken, and the case set down for argument, when he died. Mr. Appleton was appointed executor of his will, and revived the bill. A concise history of the case is given in the opinion.

*Howard & Shepley* argued for the plaintiff, and put in the brief which *Mr. Holmes* had prepared for the argument of his case. On this brief were cited the following authorities. Story on Part. 371, 47; 18 Pick. 95; 2 Kent, 613; 1 Madd. Pr. 560; 1 Metc. 193; 6 Johns. R. 110; 22 Pick. 546; 18 Maine R. 418; same, 436; 17 Maine R. 329; *Warren* v. *Emerson & al.* U. S. Circuit Court at Portland; 16 Maine R. 403; Paley on Agency, c. 3, § 1, 2; 13 Peters, 26; 3 Peters, 210; 9 Ves. 21; 2 Cowen, 129; 1 Jac. & W. 19; 5 Johns. Ch. R. 174; 2 Johns. Ch. R. 596; 6 Munf. 283; 4 Price, 131; 2 Johns. Ch. R. 512; 3 Cranch, 270; 2 Metc. 319; 8 Pick. 9; 9 Pick. 272; 2 Kent, 515; 2 Hill, 159 and 451; 13 Wend. 518; 1 Salk. 289; 23 Wend. 260; 18 Wend. 175; 12 Wend. 413; 3 Wend. 631; 9 Cond. Engl. Ch. R. 65; same, vol. 12, 625; same, vol. 5, 14; same, vol. 2, 7; same, vol. 4, 131; Dougl. 228; 1 Pet. C. C. R. 496; Story's Agency, 3, 117, 270; 1 Mad. Chancery, 262; 15 Maine R. 225; 17 Maine R. 329; 15 Maine R. 286; 1 Metc. 560; 2 Sumn. 206; 9 Cranch. 153.

*Fessenden, Deblois & Fessenden* argued for the defendant.

The opinion of the Court was delivered on April 24, 1846, by

WHITMAN C. J. — The plaintiff's bill sets forth, that the defendant, Horton, together with Churchill, Fish, Dolbier, and others unknown, were owners of and interested in a tract of land; that the three last named individuals, acting for themselves as well as agents for Horton, and with his knowledge and consent, represented said tract to the plaintiff's testator

and certain individuals associated with him, to have a large quantity of excellent timber standing and growing thereon; and as affording excellent facilities for getting the same to market; and that the plaintiff's testator and his associates, in certain proportions, in September, 1835, were induced, by such representation, to become purchasers of the tract; and, therefor, to give their joint and several promissory notes for large sums of money, the plaintiff's testator's proportion of which was $6,250; that the defendant, Horton, received a large proportion of the consideration; that the plaintiff's testator had paid him about $5,000 thereof; and on the 8th of September, 1840, on a settlement with said Horton, for a note for a part of said consideration, and costs of suit thereon, gave said Horton a new note for $2000, being a part of said consideration, with sureties, with a mortgage of real estate, as further security for the payment thereof; that at the time of the contract for the sale, the title in and to the tract, stood in the name of Samuel E. Crocker, who thereafter conveyed the same to Churchill, Dolbier and Fish, to and for the use of themselves, and of said Horton and others, who conveyed the same to the plaintiff's testator and his associates; that said tract was of much less value, and contained much less timber, than had been represented by Churchill, Dolbier and Fish, acting as agents for said Horton, and with his knowledge and consent; and that, for the purpose of defrauding the plaintiff's testator and his associates, there were exhibited to them certain certificates, highly exaggerating and misrepresenting the quantity and value of said timber, and facilities for getting it to market; that the plaintiff's testator made several payments to said Horton without knowing that he had any connexion with the sale, or concern therein, and in the belief that he was a *bona fide* purchaser of the notes given as aforesaid, and continued so uninformed till after the giving of the note for $2000; and that Churchill, Dolbier and Fish, for themselves, and as agents for Horton, employed one Solon Whiting to pretend to be desirous of purchasing said tract, at a large price, for a company in New York; when in fact no such company existed,

and Whiting himself being utterly worthless, with a view to induce the plaintiff's testator and his associates to become purchasers thereof, at a price greatly beyond its real value; and that said Whiting, in pursuance thereof, did make such pretences to the plaintiff's testator and his associates. The plaintiff thereupon prays that said Horton and others may be held to make discovery, &c. and that said note and mortgage may be decreed to be given up and cancelled, and for the restoration of the sum so as aforesaid paid to said Horton.

Horton alone appears to have been summoned to answer to the bill, and the plaintiff, alone, complains of the injury alleged to have been done jointly to his testator and his associates. The requisite parties, therefore, do not seem to be before the Court. But Horton has appeared, and put in his answer without insisting upon any exception, on account of such defect; and the plaintiff's testator, in his lifetime, filed a general replication thereto; and proofs have been taken, and the cause has been fully argued as between the testator and Horton.

In the first place, Horton's answer expressly negatives every material allegation made against him in the bill. In proceedings in equity this, ordinarily, is equivalent to the testimony of one credible witness that the facts stated in the bill are not true. The plaintiff, in such case, must adduce proof sufficient to overcome such denial, and fully establish his allegations. Horton, furthermore in his defence, states that he was, for a valuable consideration one of the assignees of a bond, conditioned for the conveyance of the tract, upon the performance of certain conditions; and that he had given to the said Churchill a bond to assign and convey to him, upon certain terms and conditions, his interest in the tract; and that, after a lapse of time, Churchill notified him that he was ready to perform the conditions, and take a conveyance of his interest in the tract, as had been agreed between them; and, thereupon, he, on receiving the money and securities, as had been stipulated, caused his interest to be conveyed to said Churchill, and his appointees, Dolbier and Fish; that he knew nothing of any means made use of by Churchill, Dolbier and Fish, or either

of them, to induce the plaintiff's testator, or any one else to buy the premises of them ; that they never were his agents for any such purpose. And the plaintiff's proofs are so far from negativing this statement, that they seem to be fully in confirmation of it. Churchill's testimony, taken somewhat irregularly by the testator, in his lifetime, after having named him as a party defendant in his bill, corroborates Horton's statement very explicitly. Under such circumstances fraud cannot be imputed to him. And it does not appear that any contract was ever made between him and the testator, out of which any misunderstanding has arisen. The conveyance which Horton caused to be made to Churchill, Dolbier and Fish was without reference to any understanding, so far as appears, with the testator or his associates. He received the notes of the latter in payment, in part, for the consideration for his conveyance, but they were indorsed to him by his assignees, Churchill and others, with whom, alone, the testator and his associates had contracted. There is no proof in the case tending to show that Horton had the slightest intimation of any thing that had passed between his assignees, and the testator and his associates, to induce them to make the purchase of Churchill and others. The allegation that he had any concern in procuring Whiting to make false pretences of a wish to purchase the tract, is wholly unsupported by proof, as is also the allegation of his connexion with the exhibition of false certificates. He did no act, so far as appears, personally, or by authorization, either express or implied, with a view to deceive any one. It does not appear that he had any connexion with Dolbier and Fish, further than to cause a conveyance to be made to them at the request of Churchill, and to receive from those three persons the consideration, agreed by Churchill to be paid to him. Neither of them can be regarded as his agents with power to make sale for him. Surely, if A gives a bond to B, to convey a farm to him, provided he elects to take it within a certain period, and in case of taking it B stipulates to pay a part of the consideration at the time of taking it, and to give satisfactory security for the residue, payable at a future day,

and B bargains with C, to let him have the farm on terms agreed upon between them, and B and C go to A, and C pays A the part of the consideration agreed upon between A and B, and gives security for the residue, without any knowledge on the part of A, that any unfair means were used by B to induce C to make the purchase, the security so taken by A will be good in his hands. It would be the same in effect as if B had taken the conveyance to himself, and had afterwards conveyed to C taking his negotiable notes for the consideration, and transferred them to A in payment for the consideration agreed to be paid to him.

The case before us is even more favorable to the defendant than the case supposed. His interest was actually conveyed to Churchill, to whom he had contracted to convey it, and his appointees, and not to the testator and his associates, who did not bargain with the defendant, and who took their conveyance from those to whom the defendant had caused the conveyance to be made. The defendant, therefore, might well take a transfer of the securities his assignees had received as the consideration for their sale to the testator and his associates.

If the testator suffered damage, by reason of fraudulent misrepresentations and foul practices, the remedy of the executor is against the grantors of the testator, who perpetrated the fraud, and not against Horton, who, for aught that appears, was innocent of it. Horton had set his price upon his interest in the land. Churchill, Dolbier and Fish were content to give it. They make no complaint of any thing that he said or did. Nothing existed between them, that can be deemed to amount to a mutual mistake, in reference to the premises. Horton does not appear to have had any particular knowledge of the value of the land. It is not pretended, that he ever personally made any representation whatever to Churchill, or either of his two associates. It does not appear that he ever formed any estimate in his own mind of the value of the timber on the land. There cannot, therefore, be said to have been any mistake in his apprehension about it. There is, therefore, no ground to

suppose that any thing like a mutual mistake existed between him and any one else concerning it.

The bill, therefore, must be dismissed with costs for the defendant, Horton.